UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAD BLACKINGTON et al.,<br><br>                              Plaintiffs,<br><br>   v.<br><br>QUIOGUE FAMILY TRUST et al.,<br><br>                              Defendants. | CASE NO: 11-CV-1670 W (WVG)<br><br>ORDER GRANT IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 34] |

Pending before the Court is Plaintiffs' motion for partial summary judgment under Federal Rule of Civil Procedure 56. (*MSJ* [Doc. 34]; *see also Reply* [Doc. 38].) Defendant opposes. (*Opp'n* [Doc. 37].) The Court decides the matters on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for partial summary judgment [Doc. 34].

I.   BACKGROUND

This case centers on alleged discrimination against non-Filipinos and families with children in the 17 Palm Apartment complex in National City, California (the "complex"). In 2005, Plaintiffs Chad and Sonia Blackington and their minor children moved into the complex. (*Declaration of Sonia Blackington* [Doc. 34-2], ¶ 2.) The

1  Blackingtons claim that when they moved in, 50% of the tenants were Filipino.  (*Id.*, ¶
2  3.)  The Blackingtons are not Filipino.  (*Id.*)
3     In 2008, Defendants Nonie J. Quiogue and Gilda U. Quiogue, who are Filipino,
4  purchased the complex.  (*Declaration of Nonie Quiogue* [Doc. 37-2], ¶ 3.)  The
5  Blackingtons claim that after the Quiogues purchased the complex, they began
6  discriminating against non-Filipino tenants and applicants, as well as tenants with
7  children.  (*See generally Compl.* [Doc. 1].)  In particular, the Blackingtons claim that
8  the following rules, instituted by the Quiogues, contain unlawful discriminatory
9  statements:

> Each tenant is responsible for the action of their children and guests.  This includes damages to any 17 Palm Property caused by misuse.  Repair expense will be charged [sic] to the tenant ("Rule 4").
> . . .
> Please keep children under control at all times.  It is not the responsibility of the Manager or other tenants to baby sit them ("Rule 5").

(*Pls.' Mot. Summ. J.* [Doc. 34-1], 9-14; *Pls.' Ex. 3* [Doc. 34-4], ¶¶ 4, 5.)

15    On July 28, 2011, the Blackingtons commenced this action, alleging negligence
16  and violations of the Fair Housing Act ("FHA"), the California Fair Employment and
17  Housing Act ("FEHA"), the California Unruh Civil Rights Act ("Unruh Act"), and the
18  Unfair Business Practices Act ("UBPA").  (*Compl.*, ¶¶ 33-44.)  On September 19, 2011,
19  the Quiogues filed their answer.  (*Answer* [Doc. 3].)  On September 14, 2012, the
20  Blackingtons moved for partial summary judgment with respect to, *inter alia*, their
21  familial discrimination claims under the FHA, Unruh Act, and UBPA.  The Quiogues
22  oppose.

## II.  LEGAL STANDARD

25    Summary judgment is appropriate under Rule 56(c) where the moving party
26  demonstrates the absence of a genuine issue of material fact and entitlement to
27  judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477
28  U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law,

1  it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
2  248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about
3  a material fact is genuine if "the evidence is such that a reasonable jury could return a
4  verdict for the nonmoving party." Anderson, 477 U.S. at 248.

5        A party seeking summary judgment always bears the initial burden of establishing
6  the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving
7  party can satisfy this burden in two ways: (1)by presenting evidence that negates an
8  essential element of the nonmoving party's case; or (2) by demonstrating that the
9  nonmoving party failed to make a showing sufficient to establish an element essential
10 to that party's case on which that party will bear the burden of proof at trial. Id. at 322-
11 23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary
12 judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630
13 (9th Cir. 1987).

14       "The district court may limit its review to the documents submitted for the
15 purpose of summary judgment and those parts of the record specifically referenced
16 therein." Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).
17 Therefore, the court is not obligated "to scour the record in search of a genuine issue
18 of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards
19 v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to
20 discharge this initial burden, summary judgment must be denied and the court need not
21 consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144,
22 159-60 (1970).

23       If the moving party meets this initial burden, the nonmoving party cannot defeat
24 summary judgment merely by demonstrating "that there is some metaphysical doubt as
25 to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475
26 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th
27 Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of
28 evidence in support of the nonmoving party's position is not sufficient."). Rather, the

nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

Rule 56(d) provides for partial summary judgment. See Fed. R. Civ. P. 56(d) ("[T]he court . . . shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted."). Under Rule 56(d), the court may grant summary judgment on less than the non-moving party's whole claim. Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.). Partial summary judgment is a mechanism through which the Court deems certain issues established before trial. Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 Moore's Federal Practice ¶ 56.20 (3.-2) (2d ed. 1976)). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id.

### III. DISCUSSION

#### A. Defendants' Argument That Plaintiffs' Familial Discrimination Claims Are Improper is Incorrect.

As a preliminary matter, the Quiogues contend that the Blackingtons' motion for partial summary judgment with respect to their familial discrimination claims is improper because it is not based upon factual allegations in the complaint. (Opp'n 2.)

Specifically, the Quiogues argue that because the complaint contains no factual allegations of discrimination based on familial status, they have not been given "fair notice" of the claims asserted. (*Id.*) The Blackington's respond that they have alleged facts regarding familial discrimination. (*Reply,* 1.)   However, the Complaint directly references the alleged discriminatory rules. (*Compl.* ¶ 16.) Additionally, the Complaint repeatedly refers to the Quiogues' alleged discrimination against families with children. (*Id.* at ¶¶ 1, 12, 20, 32, 34, 36, 38, 43.) Thus, it should have been clear to the Quiogues that the Blackingtons were accusing them of familial-status discrimination. In light of the foregoing, the Court finds the Quiogues' had fair notice of these claims.

### B. The Blackingtons Have Standing to Bring "Familial Status" Discrimination Claims.

The Quiogues also maintain that the Blackingtons do not have standing to bring "familial status" discrimination claims because they have not named their children as plaintiffs in the lawsuit. (*Opp'n* 4-5.) The Court disagrees.

"[T]he concept of standing under the FHA is broad." <u>Pack v. Fort Washington</u>, 689 F.Supp.2d 1237, 1242 n.1 (E.D. Cal. December 30, 2009). Indeed, the FHA allows any "aggrieved person" to file a complaint alleging a discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" includes "any person who claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(I). A "discriminatory housing practice" means an act that is unlawful under §§ 3604, 3605, 3606, or 3617 of the Act. 42 U.S.C. § 3602(f). The Ninth Circuit has held that any person harmed by discrimination in violation of the FHA can sue under the Act. <u>San Pedro Hotel v. City of Los Angeles</u>, 159 F.3d 470, 475 (9th Cir.1998) (citing <u>Trafficante v. Metropolitan Life Ins. Co.</u>, 409 U.S. 205, 212 (1972)).

There is no dispute that the Blackingtons are a family with children. The FHA was implemented to protect families with children from discrimination, not just the

children as individuals. See 42 U.S.C. § 3602(k)(1). In addition, The Blackingtons explicitly claim they were injured by violations of § 3604. (*Compl.*, ¶ 34.) Specifically, they allege that "Defendants have injured plaintiffs in violation of the federal Fair Housing Act." (*Id.*) Moreover, the Quiogues admit that they cannot present any legal authority that affirmatively requires the Blackington's to name their children as plaintiffs. (*See Opp'n*, 5.) For these reasons, the Court finds that the Blackingtons have standing to bring the contested familial discrimination claims.

### C. Alleged Violations of the Fair Housing Act 42 U.S.C. § 3604

In 1968, Congress promulgated the FHA, 42 U.S.C. §§ 3601, et seq., to prohibit discrimination on the basis of race, color, religion, or national origin. In 1988, Congress enacted the Fair Housing Amendments Act (the "FHAA") amending the FHA to proscribe "familial status" discrimination. "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another personal having legal custody of such individual or individuals." 42 U.S.C. § 3602(k)(1). Under the FHA, it is unlawful:

> (b) To discriminate against any persons in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of ... familial status ... .
>
> (c) To make, print, or publish, or cause to be made, printed or published by any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status ... or on intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604; see also 24 C.F.R. § 100.65.

The Blackingtons allege that the Quiogues discriminated against them on the basis of familial status, in violation of 42 U.S.C. §§ 3604(b) and (c). The Court will address each section separately.

#### 1. Plaintiff's 42 U.S.C. § 3604(b) Claim

The Blackingtons first argue that Rule 5 violates 42 U.S.C. § 3604(b) as a matter of law because it is facially discriminatory towards families with children. (*MSJ*, 11.) They allege their claim under a disparate-treatment theory. (*Id.*, 10.) The Quiogues counter by suggesting that the rule contains no limitation on use of any area of the complex. (*Opp'n*, 5-8.) For the following reasons, the Court finds that while Rule 5 targets families, summary judgment is not appropriate.

"A plaintiff makes out a prima facie case of intentional discrimination under the Fair Housing Act merely by showing that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment." Community House, Inc. v. City of Boise, 490 F.3d 1041, 1050 (9th Cir.2007). However, differential treatment itself is not always prohibited. See id. Once a plaintiff makes out a prima facie case of facial discrimination, the burden shifts to the defendant to justify the facially discriminatory policy. See id. A defendant seeking to justify a facially discriminatory policy must show "either: (1) that the restriction benefits the protected class or (2) that it responds to a legitimate safety concern raised by the individuals affected, rather than being based on stereotypes." Id. at 1050.

As a preliminary matter, the Court notes that the bar for establishing that a rule is "facially discriminatory" is extremely low. Therefore, the Blackingtons need only show that Rule 5 explicitly treats tenants with children differently than tenants without children. See Community House, 490 F.3d at 1050. The Blackingtons first allege that Rule 5 is facially discriminatory because it "limits when children may use the facilities to times when there is adult 'control.'"(*MSJ* 11.) Second, the Blackingtons argue that Rule 5 is facially discriminatory under § 3604(b) because it applies only to families with children. (*MSJ* 11.) The Court agrees.

By requiring tenants to keep their children "under control," Rule 5 explicitly treats families different than adult-only households. To wit, members of adult-only households are not required to be "under control" at all times. Nor does Rule 5 require tenants to keep adult guests "under control". Having determined that the rule targets

1 only families with children, the Court must now evaluate the Quiogues' proffered
2 justifications for the policy.

3 According to the Quiogues, the rule was designed to inform tenants that they
4 were responsible for their child's safety. (*Decl. Quiogue*, ¶ 13.)  In addition, they assert
5 that the rule is designed to avoid potential legal issues that could when tenants'
6 children, who are unsupervised, are injured or cause property damage. (*Id.*) The
7 Blackingtons fail to address the Quiogues' proffered justifications for Rule 5.

8 Viewing the record in the light most favorable to the Quiogues, the Blackingtons
9 request for summary-judgment on their 42 U.S.C. § 3604(b) claim is **DENIED.** See
10 Matsushita, 475 U.S. at 587.

### 2. Plaintiff's 42 U.S.C. § 3604(c) Claims

13 The Blackingtons next contend that Rules 4 and 5 are statements that violate
14 42 U.S.C. § 3604(c) because they indicate "preferences, limitations, or discrimination
15 on familial status." (*MSJ*, 14.)  The Quiogues contest these claims, offering evidence
16 demonstrating the purpose behind each rule. (*Opp'n*, 5-8.)  For the following reasons,
17 the Court finds that issues of material fact exist as to whether either rule "suggests a
18 preference" to an ordinary reader or listener.

19 "Unlike § 3604(b), § 3604(c) does not require discriminatory intent and is not
20 analyzed under a burden-shifting paradigm." Pack, 689 F.Supp.2d at 1245. "Rather,
21 the inquiry under this standard is whether the alleged statement at issue would suggest
22 a preference to an "ordinary reader or listener.'" Id. (citing Fair Housing Congress v.
23 Weber, 993 F.Supp. 1286, 1291 (C.D. Cal. December 4, 1997)).

24 The Blackingtons' entire argument with respect to Rule 4 is that it "clearly ...
25 indicates a discrimination against families with children to an ordinary reader" because
26 a neutral rule would have been "Each tenant is responsible for his or her actions and the
27 actions of his or her guests." (*MSJ*, 14.)  The Court disagrees.

Rule 4 provides that all tenants are "responsible for the action of their children and guests." (*Pls.' Ex. 3*, ¶ 4.) This rule targets all tenants, not just those with children. Moreover, the rule indicates that tenants are responsible for guests, which includes both children and adults. Therefore, the Court finds that an ordinary reader would not "clearly" find the rule to discriminate against children.

The Blackingtons' equally brief argument as to Rule 5 is that "unquestionably, [Rule 5] indicates a limitation or discrimination based on familial status to an ordinary reader." (*MSJ*, 14.) "[I]t is difficult to comprehend how rules that are properly justified by safety reasons could survive under 3604(b) yet fail under 3604(c)." See Pack, 689 F.Supp.2d at 1246. Therefore, the Court finds that a dispute of material fact exists as to whether Rule 5 violates § 3604(c).

Viewing the record in the light most favorable to the Quiogues, the Blackingtons request for summary-judgment on their 42 U.S.C. § 3604(c) claims is **DENIED.** See Matsushita, 475 U.S. at 587.

### D. Violation of 24 C.F.R. § 110.30

The Blackingtons also argue that Nonie Quiogue's failure to post a Fair Housing poster at the complex violated 24 C.F.R. § 110.30. The Court agrees.

24 C.F.R. § 110.30 provides, in its entirety:

> Any person who claims to have been injured by a discriminatory housing practice may file a complaint with the Secretary pursuant to Part 105 of this chapter. A failure to display the fair housing poster as required by this part shall be deemed prima facie evidence of a discriminatory housing practice.

Nonie Quiogue concedes that he did not display a Fair Housing poster until he was made aware of the poster at his deposition. (*Decl. Nonie Quiogue* ¶ 33.) Thus, the Court agrees that the Quiogues violated the regulation.

In light of the foregoing, the Court **GRANTS** the Blackingtons' motion for summary judgment with respect to the Quiogues' violation of 24 C.F.R. § 110.30.

### E. <u>Vicarious Liability</u>

The Blackingtons next argue that Defendant Quiogue Family Trust is liable for the discriminatory acts of its agent, Nonie Quiogue, by virtue of vicarious liability. (*MSJ* 15,16.)

The duty not to discriminate under the Fair Housing Act is nondelegable. <u>Fair Housing Congress</u>, 993 F.Supp. at 1294 (citing <u>Phiffer v. Proud Parrot Motor Hotel, Inc.</u>, 648 F.2d 548, 552 (9th Cir. 1980)). Moreover, a property owner is liable for the discriminatory acts of employees even if the property owner instructed his employees not to discriminate. <u>Fair Housing Congress</u>, 993 F.Supp at 1294 (citing <u>Walker v. Crigler</u>, 976 F.2d 900, 904-05 548, 552 (4th Cir. 1992)).

The Blackingtons claim that the Quiogue Family Trust, as owner of the complex, is vicariously liable for the discriminatory acts of its employees. (*MSJ*, 15.) The Quiogues do not dispute this contention. The Court finds that the Blackingtons' position is supported by law. <u>Fair Housing Congress</u>, 993 F.Supp. at 1286. Therefore, the Court finds that if Nonie Quiogue is found to violate any of his duties not to discriminate under the Fair Housing Act, the Quiogue Family Trust is vicariously liable for any such violations. In light of the foregoing, the Court **GRANTS** the Blackingtons' motion on this ground.

### F. <u>Unfair Business Practices Act</u>

The Blackingtons also argue that as a matter of law, the Quiogues violated the Unfair Business Practices Act of Business & Professions Code §§ 17200 *et seq.* (*MSJ*, 16.) They claim that because the Blackingtons committed "unlawful" acts by violating the Fair Housing Act, they have necessarily violated the Business & Professions Code based this claim on the fact that. (*Id.*) However, as explained above, this Court has not found that the Quiogues committed "unlawful" acts except with respect to 24 C.F.R. § 110.30. Thus, the Court **GRANTS** the Blackingtons' motion for summary judgment regarding the Business & Professions Code claim with respect

to the Quiogues' violations of 24 C.F.R. § 110.30, but **DENIES** the motion with respect to all other alleged violations.

### G. Entitlement to Statutory Damages

Finally, the Blackingtons argue that the Quiogues violated the Unruh Civil Rights Act, Cal. Civ. Code § 51, as a matter of law. Further, they contend these violations entitle them to statutory damages under California Civil Code § 52. The Blackingtons argument, in its entirety, is that "[t]he foregoing actions of defendants violate the Unruh Civil Rights Act."

Although the Blackingtons provide no clarification as to which "foregoing actions" they reference, the Court assumes that they are referring to the alleged violations of the Fair Housing Act. As noted above, the only "foregoing action" that violated the Fair Housing Act was the Quiogues violation of 24 C.F.R. § 110.30. However, the Blackingtons' have provided no argument as to why a violation of this regulation necessarily violates the Unruh Act. Thus, the Blackingtons have not shown that as a matter of law, failure to post a fair housing poster violates the Unruh Act. Therefore, the Court **DENIES** the Blackingtons' motion on this ground.

### IV. CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Blackingtons' motion for partial summary judgment.

**IT IS SO ORDERED.**

DATED: April 18, 2013

_____
HON. THOMAS J. WHELAN
United States District Judge
Southern District of California